UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BRITTANY WILLIAMS, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>    Defendant. | Case No: 3:25-cv-12599-JDA<br><br>(Oral Argument Requested) |

## MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF DEFENDANT FREEDOM MORTGAGE CORPORATION'S MOTION TO DISMISS

**RIMÔN PC**
Keith D, Munson
220 North Main St.
Suite 500
Greenville, SC 29601
Telephone: (864) 420-3426
Email: keith.munson@rimonlaw.com

**SKADDEN, ARPS, SLATE,
 MEAGHER  & FLOM LLP**

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Leslie Demers (*pro hac vice*)
Colm P. McInerney (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Email: michael.mctigue@skadden.com
        meredith.slawe@skadden.com
        leslie.demers@skadden.com
        colm.mcinerney@skadden.com

*Counsel for Defendant Freedom Mortgage
Corporation*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND ....................................................................................................................2

RELEVANT STANDARDS .....................................................................................................7

ARGUMENT ........................................................................................................................9

      I.      The Action Should Be Dismissed, Or Alternatively Transferred, For Lack of Personal Jurisdiction And Improper Venue ..........................................................9

      II.     Plaintiff's Claim Otherwise Fails As Cell Phones Are Not "Residential" Phones Under Section 227(c)..............................................................................14

      III.    Plaintiff's SCTPPA Claim—Which Is Entirely Contingent On The TCPA Claim—Should Also Be Dismissed ........................................................................19

CONCLUSION.....................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**

*ACA International v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018)............................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................9

*Barr v. American Ass'n of Political Consultants, Inc.*,
    591 U.S. 610 (2020)............................................................................................2

*Boardman v. Green Dot Corp.*,
    No. 3:21-CV-00174-FDW-DSC, 2021 WL 3699856 (W.D.N.C. Aug. 19, 2021) .............18

*Boger v. Citrix Systems, Inc.*,
    No. 8:19-cv-01234-PX, 2020 WL 1033566 (D. Md. Mar. 3, 2020) ................................18

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    582 U.S. 255 (2017)...........................................................................................13

*Brown v. SunTrust Bank*,
    No. 4:19-CV-02813-SAL-KDW, 2020 WL 3848169 (D.S.C. Feb. 24, 2020)....................9

*Campbell v. Avis Budget Grp., Inc.*,
    No. 6:24-cv-03982-JDA, 2025 WL 1207776 (D.S.C. Apr. 25, 2025) ................................7

*Cap. Resorts Grp., LLC v. Wesley Fin. Grp.*,
    No. 4:24-CV-03043-JDA, 2025 WL 1047421 (D.S.C. Apr. 7, 2025)................................8

*Clemens v. Consumer Solution Center*,
    No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2604494 (E.D. Va. July 14, 2025),
    *report and recommendation adopted*, No. 1:21-cv-1002 (RDA/LRV), 2025 WL
    2427685 (E.D. Va. Aug. 22, 2025)............................................................................17, 18

*Cunningham v. Britereal Management, Inc.*,
    No. 4:20-cv-144-SDJ-KPJ, 2020 WL 7391693 (E.D. Tex. Nov. 20, 2020),
    *report and recommendation adopted*, No. 4:20-cv-144-SDJ-KPJ, 2020 WL
    7388415 (E.D. Tex. Dec. 16, 2020) .........................................................................16

*Cunningham v. Daybreak Solar Power, LLC*,
    No. 3:22-cv-9-MOC-DCK, 2022 WL 2759074 (W.D.N.C. July 14, 2022).............9, 11, 12

*Cunningham v. Headstart Warranty Grp., LLC*,
    No. 3:23-CV-00239-GCM, 2024 WL 967665 (W.D.N.C. Mar. 6, 2024) ...................10, 12

*Cunningham v. Politi*,
No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702 (E.D. Tex. Apr. 16, 2019),
*report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2526536 (E.D.
Tex. June 19, 2019) ............................................................................................16

*Cunningham v. Sunshine Consulting Group, LLC*,
No. 3:16-cv-02921, 2018 WL 3496538 (M.D. Tenn, July 20, 2018),
*report and recommendation adopted*, No. 3:16-cv-02921, 2018 WL 5728534
(M.D. Tenn. Aug. 7, 2018) ................................................................................16

*Davis v. CVS Pharmacy, Inc.*,
No. 4:24-cv-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025).................5, 19

*Davis v. Reliance First Capital LLC*,
No. 7:22-CV-00018, 2023 WL 1982354 (E.D.N.C. Feb. 13, 2023) ...................................18

*El Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)............4, 19

*EmeryAllen, LLC v. MaxLite Inc.*,
No. 2:20-cv-4332-RMG, 2021 WL 2111159 (D.S.C. May 25, 2021) ....................8, 11, 12

*FCC v. ITT World Communications, Inc.*,
466 U.S. 463 (1984)............................................................................................4

*Fidrych v. Marriott International, Inc.*,
952 F.3d 124 (4th Cir. 2020) ............................................................................11

*Gaker v. Q3M Insurance Solutions*,
No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023)................16

*Gaston v. LexisNexis Risk Sols., Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) ............................................................13

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ............................................................................7

*Jones v. Blackstone Medical Services, LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025),
*appeal filed sub nom. Steidinger v. Blackstone Med. Servs.*, No. 25-2398 (7th Cir.
Aug. 12, 2025) ...............................................................................................5, 19

*Krakauer v. Dish Network L.L.C.*,
311 F.R.D. 384 (M.D.N.C. 2015),
*aff'd*, 925 F.3d 643 (4th Cir. 2019) ..................................................................15

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)..........................................................................................2, 4

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025)........................................................................................2, 4

*Mey v. Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*,
    No. 5:23-CV-46, 2023 WL 12090755 (N.D. W. Va. June 18, 2023) ................................18

*Mylan Laboratories, Inc. v. Akzo, N.V.*,
    2 F.3d 56 (4th Cir. 1993)..................................................................................8

*Newman v. Direct Energy, L.P.*,
    No. SAG-21-02446, 2023 WL 2914788 (D. Md. Apr. 12, 2023) ......................................13

*Newman v. SGMS, Inc.*,
    No. 3:25-CV-00042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025) .........17, 18

*Nickson v. Advanced Marketing & Processing, Inc.*,
    Civ. No. DLB 22-2203, 2023 WL 4932879 (D. Md. Aug. 2, 2023) ................................18

*Radvansky v. Kendo Holdings, Inc.*,
    744 F. Supp. 3d 1314 (N.D. Ga. 2024) ..............................................................17

*Realson v. University Medical Pharmaceuticals Corp.*,
    No. 4:09-cv-3277-TLW-TER, 2010 WL 1838911 (D.S.C. May 6, 2010) ........................12

*Republican Party of North Carolina v. Martin*,
    980 F.2d 943 (4th Cir. 1992)..............................................................................8

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    18 FCC Rcd. 14014 (2003)...............................................................................4

*Slate v. Healthy Spirit, LLC*,
    No. MJM-23-3034, 2025 WL 326985 (D. Md. Jan. 28, 2025).......................................18

*Tessu v. AdaptHealth, LLC*,
    No. SAG-23-0364, 2023 WL 5337121 (D. Md. Aug. 17, 2023) ......................................18

*Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*,
    603 F. Supp. 3d 1334 (S.D. Fla. 2022)................................................................17

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014)..............................................................................7

*Viza Electronics, LLC v. Paradigm Clinical Research Institute, Inc.*,
    No. 3:22-cv-49-MOC-DCK, 2022 WL 4459836 (W.D.N.C. Sept. 23, 2022) ....................8

*Williams v. Quantum 3 Media, LLC*,
    No. 3:23-CV-037-RJC-DCK, 2024 WL 5500192 (W.D.N.C. Feb. 27, 2024) ..................18

**STATUTES**

28 U.S.C. § 1391 ...................................................................................................1, 9, 10

28 U.S.C. § 1406(a) ...........................................................................................1, 8, 10, 12

47 U.S.C. § 227.................................................................................................2, 3, 7, 14

Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394-95 (1991) .......................................2, 14

S.C. Code Ann. § 37-21-20 ......................................................................................19

S.C. Code Ann. § 37-21-70 ..............................................................................1, 5, 7, 19

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ...................................................................1, 7

Federal Rule of Civil Procedure 12(b)(3) ...................................................................1, 8

Federal Rule of Civil Procedure 12(b)(6) ....................................................................2,8

**REGULATIONS**

47 C.F.R. § 64.1200 ....................................................................................................3

**OTHER AUTHORITIES**

Complaint, *Cunningham v. Daybreak Solar Power, LLC*,
    No. 3:22-cv-00009-MOC-DCK (W.D.N.C. Jan. 7, 2022), ECF No. 1 .............................11

## PRELIMINARY STATEMENT

Plaintiff Brittany Williams's Amended Class Action Complaint, dated September 30, 2025 (ECF 5) ("Amended Complaint"), alleges that Plaintiff received telemarketing calls from Defendant Freedom Mortgage Corporation ("Freedom Mortgage") in violation of the do not call provisions contained in Section 227(c) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and Section 37-21-70 of the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code Ann. § 37-21-70. But the Amended Complaint is deficient and should be dismissed for several reasons.

*First*, the Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. It asserts that the Court "has specific personal jurisdiction over Defendant Freedom Mortgage Corporation," because "Freedom Mortgage made telemarketing calls into this state" and that "[v]enue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant made the calls into this District." (Amended Complaint ¶¶ 12-13.) But the Amended Complaint fails to allege *where* the phone calls in question originated from or *where* Plaintiff was located when she allegedly received the calls (in fact, it fails to allege where Plaintiff resides at all). Plaintiff has thus proffered insufficient allegations for the Court to exercise personal jurisdiction over Freedom Mortgage, a company incorporated in New Jersey and headquartered in Florida, or for the Court to otherwise determine that venue is proper *in this District*.[1]

---

[1] Alternatively, the case should be transferred under 28 U.S.C. § 1406(a) to either the United States District Court for the Southern District of Florida (encompassing Boca Raton, Florida where Freedom Mortgage is headquartered) or the United States District Court for the District of New Jersey (where Freedom Mortgage is incorporated). This would ensure not only that the relevant court has personal jurisdiction over Plaintiff's claims but also that it would have personal jurisdiction over the out-of-state absent class members for both of the putative nationwide classes that Plaintiff seeks to certify.

1

*Second*, even had the Amended Complaint sufficiently pled a basis for personal jurisdiction over Freedom Mortgage and established that venue is proper in this District (which it has not), it should nonetheless be dismissed for failure to state a claim under Rule 12(b)(6). Section 227(c) of the TCPA, by its plain terms, only protects "residential" subscribers from certain unwanted marketing telephone calls. Here, the plain language of Section 227(c) excludes cellular telephones from its private right of action and compels dismissal of Plaintiff's Section 227 (c) claim.

While the Federal Communications Commission (the "FCC") has stated it would "presume" that the protections of Section 227(c) may be applied to cellular telephones, district courts are no longer compelled to follow the FCC's interpretations of the statutory text that—as here—conflict with the plain meaning of the TCPA. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). Plaintiff's additional claim, under the SCTPPA, should also be dismissed because it is entirely contingent on the TCPA claim.

## **BACKGROUND**

### A.     **Congress Enacted The TCPA In 1991 To Address Certain Telephone Calls**

Congress passed the TCPA in 1991 to address certain abusive telemarketing business-to-consumer calling practices, such as a proliferation in marketing conducted via "automated or prerecorded telephone calls." Pub. L. No. 102-243, 105 Stat. 2394, 2394-95 (1991); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614 (2020) ("The Act responded to a torrent of vociferous consumer complaints about intrusive robocalls."). In doing so, Congress created only two limited private rights of action under the statute:

    i.   47 U.S.C. Section 227(b)(3), which concerns "Restrictions On Use Of Automated Telephone Equipment"; and

    ii.  47 U.S.C. Section 227(c)(5), which concerns "Protection Of Subscriber Privacy Rights," referred to as the Do Not Call Registry provisions.

2

Plaintiff brings a claim under Section 227(c), the TCPA's Do Not Call Registry provisions. Section 227(c) addresses "the need to protect *residential* telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). It provides for a private right of action by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]." *Id.* § 227(c)(5).

To implement Section 227(c), the TCPA authorized the FCC to establish a "single national database" of telephone numbers belonging to "residential subscribers" who object to receiving "telephone solicitations." *Id*. § 227(c)(3). In 2003 the FCC did so, issuing regulations and creating the National Do Not Call Registry ("Do Not Call Registry"). *See* 47 C.F.R. § 64.1200. These regulations prohibit the "initiat[ion of] telephone solicitation[s]" to "residential" phones placed on the Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2); *see also* 47 U.S.C. § 227(c)(3)(F). Section 227(c) provides an affirmative defense if "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The FCC's implementing regulations for Section 227(c) further provide that "[a]ny person or entity making telephone solicitations . . .will not be liable for violating this requirement if. . . [i]t can demonstrate that the violation is the result of error and that as part of its routine business practice" it meets specific standards or "[i]t has obtained the subscriber's prior express invitation or permission" to be contacted. 47 C.F.R. § 64.1200(c)(2)(i)-(ii).

The FCC's implementing regulations related to the Do Not Call Registry are limited to prohibiting telephone solicitations to "residential telephone subscriber[s]" that have registered their telephone number. 47 C.F.R. § 64.1200(c). Despite Congress only authorizing the FCC to

establish a database of "residential" numbers, in 2003, the FCC stated that it would "presume" that cellular telephones may be listed on the Do Not Call Registry. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003) (the "2003 Order") ("[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'").

### B.    The Supreme Court Restored The Courts' Role In Statutory Interpretation

Until recently, district courts believed they lacked jurisdiction to independently interpret the TCPA and review the FCC's final orders under the Hobbs Act. *See, e.g.*, *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."). But two recent Supreme Court decisions have restored to district courts their authority to "interpret the TCPA under ordinary principles of statutory interpretation." *McLaughlin*, 606 U.S.at 152.

First, in 2024, the Supreme Court eliminated *Chevron* deference and restored the court's ability "to decide whether the law means what the agency says." *Loper Bright*, 603 U.S.at 392 (citation omitted). Second, in June 2025, the Supreme Court rejected the line of cases holding that district courts do not have jurisdiction to contradict FCC orders:

> In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*McLaughlin*, 606 U.S.at 155. District courts are thus now empowered to reject—and have rejected—TCPA claims that fall outside of the scope of the statute's plain language, even if the claims fall within the scope of FCC orders. *See, e.g.*, *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (excluding text messages from the scope of Section 227(c) based on the plain language of the

4

statute); *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *3-4 (N.D. Fla. Aug. 26, 2025) (concluding Section 227(c)'s private right of action is "limited" to "those receiving 'telephone calls'" and "text messages are not telephone calls"); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025) (finding that "nowhere does the TCPA define 'telephone call' to include text and/or SMS messages.").

### C.     The South Carolina Telephone Privacy Protection Act Claim Also Relates To The National Do Not Call Registry

Plaintiff's SCTTPA claim is brought under Section 37-21-70, which provides that "[a] telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation to a telephone number on the National Do Not Call Registry maintained by the federal government." S.C. Code Ann. § 37-21-70(B). Like Section 227(c), this section of SCTPPA provides for an affirmative defense where "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of this section." *Id.* § 37-21-70(C).

### D.     Relevant Factual Allegations In The Amended Complaint[2]

Plaintiff alleges that her telephone number, (843) XXX-XXXX, "is a non-commercial telephone number" and that she uses the number "for personal, residential, and household reasons." (Amended Complaint ¶¶ 24-25.)[3] Further, she alleges that the number "has been listed on the National Do Not Call Registry since she personally registered it there in 2017." (*Id.* ¶ 26.)

The Amended Complaint does not specify whether Plaintiff's phone is a cellular telephone. That said, while the Amended Complaint generally alleges that Freedom Mortgage made

---

[2]     The allegations in the Amended Complaint are accepted solely for purposes of this Motion to Dismiss.

[3]     In the original Complaint, Plaintiff alleged that a different phone number was implicated. (*See* ECF 1 ¶ 24.)

telemarketing *calls* to Plaintiff, it elsewhere asserts that Freedom Mortgage violated the TCPA "by causing multiple telephone solicitation text messages and/or telemarketing text messages to be initiated to Plaintiff and members of the National DNC Class." (Amended Complaint ¶ 64.) The fact that Plaintiff alleges *text messages* were also sent to her phone permits an inference that Plaintiff's phone is a cellular telephone.[4]

The Amended Complaint asserts that "Plaintiff has never been a customer of Freedom Mortgage, never did business with Freedom Mortgage, nor asked or inquired to be a customer of Freedom Mortgage" but nonetheless she "received several telemarketing calls from Freedom Mortgage." (Amended Complaint ¶¶ 27-28.) Specifically, on July 24, 2025, Plaintiff alleges she received a telemarketing call from (405) 267-2655 that was intended to offer Freedom Mortgage's "loan services." (*Id.* ¶ 29.) Plaintiff further alleges that she received additional calls on July 25, July 31, and August 5, 2025, from this number, with each caller being "a licensed loan originator or advisor actively authorized to represent Freedom Mortgage or related mortgage companies at the time of the calls." (*Id.* ¶¶ 30-42.)

On September 17, 2025, Plaintiff filed a Complaint (ECF 1) and, on September 30, 2025, she filed an Amended Complaint. The Amended Complaint asserts two causes of action: a claim for Freedom Mortgage's alleged violation of Section 227(c)(5) of the TCPA on behalf of Plaintiff and a National Do Not Call Registry Class (the "National DNC Class") and a claim for Freedom Mortgage's alleged violation of the SCTPPA on behalf of Plaintiff and a "SCTPPA Class." (*Id.* ¶¶ 45-47.) Plaintiff proposes the following class definitions:

---

[4]   The Amended Complaint does not provide any details regarding these alleged text messages, including when they were sent (assuming they were sent) or their contents. Freedom Mortgage reserves the right to raise additional arguments if and when any specific allegations or arguments are raised by Plaintiff in this regard.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase [of] Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **SCTPPA Class:** All persons with a South Carolina area code to whom (a) at any time in the period that begins four years before the date of filing this Complaint to trial (b) from or on behalf of the Defendant (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

(*Id.* ¶ 47.)

Section 227(c) provides for a limited private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). In turn, SCTPPA prohibits "telephone solicitation[s] to a telephone number on the National Do Not Call Registry maintained by the federal government." S.C. Code Ann. § 37-21-70(B).

## RELEVANT STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "[T]he appropriate question for the Court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant 'has established minimum contacts with [South Carolina] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Campbell v. Avis Budget Grp., Inc.*, No. 6:24-cv-03982-JDA, 2025 WL 1207776, at *2 (D.S.C. Apr. 25, 2025) (Austin, J.) (citation omitted). District courts consider "the question of personal jurisdiction based on the contents of a complaint and supporting affidavits." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558-60 (4th Cir. 2014). The plaintiff must demonstrate personal jurisdiction at every stage of the litigation. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The standard of review employed by the Court is by a preponderance of the evidence when making this

determination. *See Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). The court is to "determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction." *Viza Elecs., LLC v. Paradigm Clinical Rsch. Inst. Inc.*, No. 3:22-cv-49-MOC-DCK, 2022 WL 4459836, at *3 (W.D.N.C. Sept. 23, 2022) (quoting *Sneha Media & Entm't LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 196-97 (4th Cir. 2018)).

Federal Rule of Civil Procedure 12(b)(3) permits a court to dismiss a complaint if venue is improper. *See e.g.*, *EmeryAllen, LLC v. MaxLite Inc.*, No. 2:20-cv-4332-RMG, 2021 WL 2111159, at *1-2 (D.S.C. May 25, 2021). "A case filed in an improper venue must be dismissed, or, if it is in the interest of justice, transferred to a district in which it could have been brought" under 28 U.S.C. § 1406(a). *Id.* After a defendant objects to venue, "the plaintiff bears the burden of establishing that venue is proper." *Id.* (citation omitted). The plaintiff must make a "prima facie showing of proper venue" and the court is "permitted to consider evidence outside the pleadings." *Id.* (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) provides that the Court should dismiss the Amended Complaint if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When evaluating a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all well-pleaded allegations" but "'need not accept the legal conclusions drawn from the facts' nor 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Cap. Resorts Grp., LLC v. Wesley Fin. Grp.*, No. 4:24-CV-03043-JDA, 2025 WL 1047421, at *3 (D.S.C. Apr. 7, 2025) (Austin, J.) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir.

2000)). The complaint must demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>**ARGUMENT**</u>

**I.**     <u>**The Action Should Be Dismissed, Or Alternatively Transferred, For Lack of Personal Jurisdiction And Improper Venue**</u>

The Amended Complaint asserts that the Court "has specific personal jurisdiction over Defendant Freedom Mortgage Corporation" because it "made telemarketing calls into this state" and that "[v]enue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant made the calls into this District." (Amended Complaint ¶¶ 12-13.)[5]

The United States Court of Appeals for the Fourth Circuit has "created a three-part test for determining if a court can exercise specific jurisdiction in which it considers '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) *whether the plaintiff's claims arise out of those activities directed at the State*; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Brown v. SunTrust Bank*, No. 4:19-CV-02813-SAL-KDW, 2020 WL 3848169, at *4 (D.S.C. Feb. 24, 2020) (emphasis added) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). Further, courts in this Circuit have recognized that the specific personal jurisdiction analysis and the venue analysis under 28 U.S.C. §§ 1391(c) and 1391(b)(2) of the federal venue statute "operate under nearly the same standard—[the] location of events giving rise to the claim—" such that consideration of these issues together is appropriate. *Cunningham v. Daybreak Solar Power, LLC*,

---

5     The Amended Complaint does not allege that the Court has general personal jurisdiction over Freedom Mortgage. This is because it cannot do so. Freedom Mortgage is neither incorporated in nor maintains its principal place of business in South Carolina. (*See* Declaration of Tanya Tarver, dated November 25, 2025 ("Tarver Decl."), ¶ 4 (attesting that Freedom Mortgage is a New Jersey corporation with its corporate headquarters in Boca Raton, Florida).)

No. 3:22-cv-9-MOC-DCK, 2022 WL 2759074, at *3 (W.D.N.C. July 14, 2022). Section 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides," which for purposes of a corporation is where the "defendant is subject to the court's personal jurisdiction with respect to the civil action in question. . . ." 28 U.S.C. § 1391(b)(1), (3). "[I]n TCPA cases, courts have held that venue is proper" within Section 1391(b)(1) or (b)(2) "in the district from which the at-issue call originated, or more commonly, where the call was received." *Cunningham v. Headstart Warranty Grp., LLC*, No. 3:23-CV-00239-GCM, 2024 WL 967665, at *2 (W.D.N.C. Mar. 6, 2024) (collecting cases).

When faced with a challenge as to whether venue is proper, a court retains discretion to either dismiss the case or transfer it to where venue is appropriate. *See id.* at *3 (noting that the court may transfer the case under 28 U.S.C. §§ 1404(a) and 1406(a) if it finds the transfer is "in the interest of justice.") (citation omitted).

Here, the Amended Complaint fails to allege *where* the phone calls at issue originated from or *where* Plaintiff allegedly received the calls. In fact, it does not even allege where Plaintiff is located. (*See* Amended Complaint ¶ 9 (merely alleging, under the heading "Parties," that "Plaintiff Brittany Williams is a person.").)[6] The Amended Complaint separately alleges that "Defendant Freedom Mortgage Corporation is a company that makes calls into this District" (*id.* ¶ 10), but this conclusory allegation is not supported by other factual allegations. Even were the Court to take judicial notice of the fact that Plaintiff's purported phone number, "(843) XXX-XXX" (*id.* ¶ 24), has a South Carolina area code, this is still insufficient to show—in the absence of further

---

[6]    The original Complaint asserted that "Plaintiff Brittany Williams is a person *residing in Richland County, South Carolina*." ECF 1 ¶ 9 (emphasis added).) The emphasized text was not included in the Amended Complaint. (*See* Amended Complaint ¶ 9 ("Plaintiff Brittany Williams is a person.").).

allegations—*where* Plaintiff was located when she received the calls.[7] Thus, the allegations in the Amended Complaint are insufficient to establish either that the Court has specific personal jurisdiction over Freedom Mortgage or that venue is proper in this District.[8]

The *Cunningham v. Daybreak Solar Power, LLC*, 2022 WL 2759074 (W.D.N.C. July 14, 2022) decision—another case brought by Plaintiff's counsel—is instructive. In that TCPA case, the plaintiff alleged "that venue is proper 'because the telemarketing calls at issue were made into [the Western District of North Carolina]." *Id.* at *4 (citation omitted). But the plaintiff never "specifically sa[id] that *he* was in North Carolina when he received" the telephone call at issue, nor did he allege "that the call originated in North Carolina, or that his claim arises out of any conduct by Defendant in North Carolina." *Id.* The court thus found that "[t]his general lack of support is fatal to Plaintiff's claim of proper venue in this district." *Id.*;[9] *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 139-140 (4th Cir. 2020) (noting that Marriott's "hotel-related connections to South Carolina are not relevant" to the specific jurisdiction inquiry when Plaintiff's injury occurred in "a Marriott-affiliated hotel in Milan" and "none of the wrongs Marriott is alleged to have committed took place in South Carolina"); *EmeryAllen*, 2021 WL 2111159, at *6 (dismissing for improper venue because plaintiff did not demonstrate that defendant resided in or

---

[7] Notably, the original Complaint alleged that Plaintiff's phone number was "(484) XXX-XXXX." (ECF 1 ¶ 24.) "484" is an area code for southeastern Pennsylvania. The Amended Complaint modified the allegations to state that Plaintiff's phone number that received the calls at issue was instead the 843 number. (*See* Amended Complaint ¶ 24.)

[8] The Amended Complaint is also inconsistent regarding *who* is the Plaintiff. (*Compare* Amended Complaint ¶ 6 (defining "Plaintiff" as "Plaintiff *Michele* Williams") *with id.* ¶ 9 (stating that "Plaintiff *Brittany* Williams is a person.") (emphasis added).)

[9] The court found venue was improper even though the plaintiff alleged that he "maintain[ed] a residence in North Carolina." Complaint ¶ 6, *Cunningham v. Daybreak Solar Power, LLC*, No. 3:22-cv-00009-MOC-DCK (W.D.N.C. Jan. 7, 2022), ECF No. 1. In contrast, here, the Amended Complaint does not even allege where Plaintiff is located.

a substantial part of the events occurred in the district).

In sum, Plaintiff has proffered insufficient allegations for the Court to exercise personal jurisdiction over Freedom Mortgage, a company incorporated in New Jersey and headquartered in Florida (*see* Tarver Decl. ¶ 4), or for the Court to otherwise determine that venue is proper in this District. The action must therefore be dismissed or transferred to a proper venue. *See Daybreak Solar Power, LLC*, 2022 WL 2759074, at *4 ("The Court cannot assume that it has personal jurisdiction over an entity or that it is the proper venue for a lawsuit based on bald claims alone."); *see also EmeryAllen*, 2021 WL 2111159, at *6 ("Under the plain language of § 1406(a), dismissal—and not transfer—is the default disposition of a case filed in an improper venue.").

To the extent that the Court were to consider transfer rather than dismissal under 28 U.S.C. § 1406(a), this case should be transferred to either the Southern District of Florida where Freedom Mortgage is headquartered or the District of New Jersey where Freedom Mortgage is incorporated (*see* Tarver Decl. ¶ 4). *See e.g.*, *Daybreak Solar Power, LLC*, 2022 WL 2759074, at *3 ("If the court determines that it is the improper venue," it may transfer the case to a "forum that satisfies the test under 28 U.S.C. § 1391(b) for proper venue."). Indeed, the Amended Complaint alleges that certain of the calls originated from New Jersey and Florida, respectively. (*See* Amended Complaint ¶ 31 (alleging that the caller stated they were "a loan originator employed by Freedom Mortgage Corporation in Marlton, New Jersey."); *id.* ¶ 36 (alleging that the caller on a separate call stated they were "a loan advisor authorized to represent Freedom Mortgage Corporation from its Boca Raton, Florida office.")). *See e.g.*, *Headstart Warranty Grp., LLC*, 2024 WL 967665, at *2 (noting that venue is proper in the district where the telemarketing call originated); *Realson v. Univ. Med. Pharms. Corp.*, No. 4:09-cv-3277-TLW-TER, 2010 WL 1838911, at *6 (D.S.C. May 6,

2010) (granting a motion to transfer, in part, because the defendant's employees and records were located in the transferee court's state).

Transferring the case to the Southern District of Florida or the District of New Jersey would also ensure that the relevant court has personal jurisdiction over all members of the putative nationwide classes that Plaintiff seeks to certify. (*See* Amended Complaint ¶ 47 (seeking to certify a "National DNC Class" and an "SCTPPA Class" comprised of "[a]ll persons with a South Carolina area code" that is not limited to South Carolina residents).) Alternatively, should the case remain before this Court, the Court would not be able to exercise personal jurisdiction over the out-of-state absent class members. *See Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017) (holding that the court lacked specific personal jurisdiction over the claims of non-California resident plaintiffs in a mass tort action as their injuries occurred outside of California); *see also Newman v. Direct Energy, L.P.*, No. SAG-21-02446, 2023 WL 2914788, at *4 (D. Md. Apr. 12, 2023) (granting motion to transfer a TCPA putative class action to the Southern District of Texas where the defendant company maintained its headquarters and describing the court's "uncertain" "ability to exercise personal jurisdiction over claims against [defendant] by unnamed, non-Maryland-based class members" in "light of" *Bristol-Myers Squibb* as a "significant" factor weighing in favor of transfer); *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 338 n.13 (W.D.N.C. 2020) (denying motion for class certification where the court was "concerned about exercising jurisdiction over far flung conduct" and concluding a "nationwide class should not be certified").[10]

---

[10]   Should this case not be dismissed or transferred, Freedom Mortgage reserves the right to move to strike the class allegations including on the grounds that the Court cannot certify a nationwide class because it would lack personal jurisdiction over the out-of-state absent class members. Here, the Amended Complaint is completely devoid of factual allegations that

## II.     Plaintiff's Claim Otherwise Fails As Cell Phones Are Not "Residential" Phones Under Section 227(c)

Both of Plaintiff's claims are premised on the do not call provisions set forth in Section 227(c) of the TCPA. But Plaintiff's claims fail as cellular telephone users are not considered "residential" within the meaning of that section. The text of Section 227(c) definitively resolves this question:

> [T]he Commission shall initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object. . . .  The regulations required . . . may require the establishment and operation of a single national database to compile a list of telephone numbers *of residential subscribers* who object to receiving telephone solicitations . . . .

47 U.S.C. § 227(c)(1), (3) (emphasis added). Section 227(c) unambiguously applies to calls made to residential lines only, and not to calls made to cellular telephones. In contrast, *other* provisions of the TCPA expressly reference cellular telephones. *See, e.g.*, *id.* § 227(b)(1)(A)(iii) (discussing "cellular telephone service" in context of automatic telephone dialing system ("ATDS") prohibitions). Notably, Section 227(b)(1)(A), addressing calls made using ATDS or an artificial or prerecorded voice, expressly permitted claims for calls made to cellular telephones since it was first passed in 1991. *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991). Even within Section 227(b), Congress distinguished between cellular telephones and residential telephones. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (discussing "cellular telephone service" in context of ATDS prohibitions), *with id.* § 227(b)(1)(B) (discussing "residential telephone line[s]" in context of ATDS prohibitions); *see also ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018) ("Even if one might hypothesize 'important reasons for treating residential and wireless telephone lines the

---

connect the out-of-state putative class members' alleged receipt of telephone calls from Freedom Mortgage to Freedom Mortgage's contacts with the District of South Carolina—because there are none.

same,' the TCPA itself presupposes the contrary—that calls to residential and wireless numbers warrant differential treatment." (citation omitted)). Yet, Congress did not reference cellular telephones in Section 227(c).

A plain reading of Sections 227(b) and 227(c) shows why one subsection refers to "subscribers" and the other refers to "lines." Section 227(b) includes bans on the use of specified technology to contact types of telephone lines (such as emergency telephone lines, telephone lines in hospitals, residential lines and cellular lines), whereas Section 227(c) allows certain people (*i.e.*, residential subscribers) to enroll in a National Do Not Call Registry and to object to receiving certain types of calls. Section 227(b)'s reference to "residential lines" thus does not mean that Section 227(c)'s reference to "residential subscribers" includes cellular telephones (if anything, the opposite conclusion must be reached considering that Section 227(b) differentiates between "residential" and "cellular" lines). Rather, referencing residential subscribers instead of residential lines in Section 227(c) reflects that residential lines are not people who can object to receiving calls, but subscribers are. It is also not logical that Congress intended "residential subscribers" in Section 227(c) to sweep in cellular telephones after making the careful distinction between residential and cellular in Section 227(b). It would make no sense for Congress to secretly signal a massive statutory expansion with a subtle phrasing difference (especially where the phrasing difference is required because of how the phrase is used).

The United States Court of Appeals for the Fourth Circuit has not ruled on this issue.[11] Freedom Mortgage urges this Court to join the various others that have properly concluded that

---

[11] While the class certified in *Krakauer v. Dish Network LLC*, 311 F.R.D. 384 (M.D.N.C. 2015), *aff'd.* 925 F.3d 643 (4th Cir. 2019), appeared to include wireless numbers, *see id.* at 397, the defendant in that case did not argue that Section 227(c) did not apply to cell phones and thus neither the district court nor the Fourth Circuit addressed that issue.

the plain text of Section 227(c) controls and the private right of action under this provision does not extend to cellular telephones. For example, in *Gaker v. Q3M Insurance Solutions*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) (Cayer, Mag. J.), the court concluded that the "structure and language of the TCPA controvert coverage of cell phones" when evaluating a Section 227(c) claim. Even before the Supreme Court's recent guidance in *Loper Bright* and *McLaughlin*, the Western District of North Carolina concluded that "[t]he FCC's interpretation" did not "preclude" it "from applying the clear text of the TCPA." *Id.* at *3. The court determined that the limitation imposed by the natural reading of "residential," along with Section 227(b)(1)(A)'s reference to cellular telephones, indicated cellular telephones do not fit within the scope of Section 227(c)(5)'s private right of action.

Other courts have reached a similar conclusion. *See e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, No. 3:16-cv-02921, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018) (recommending dismissal of Section 227(c) claim where plaintiff only alleged calls to his cellular telephone); *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702 (E.D.Tex. Apr. 16, 2019), (same and collecting cases), *report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2526536 (E.D. Tex. June 19, 2019); *Cunningham v. Britereal Mgmt., Inc.*, No. 4:20-cv-144-SDJ-KPJ, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020), *report and recommendation adopted*, No. 4:20-cv-144-SDJ-KPJ, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020) (concluding "telemarketing calls made to cell phones do not fall under TCPA 227(c)(5)'s purview.").

There were also other courts, when faced with evaluating whether Section 227(c)'s private right of action extends to cellular telephone users, who disagreed with the FCC's interpretation but nonetheless felt compelled by pre-*Loper Bright* and pre-*McLaughlin* precedent to apply the FCC's

"unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1342 (S.D. Fla. 2022)*; see also Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1320 (N.D. Ga. 2024) ("The Court is sympathetic to the sentiment that the 2003 FCC order may violate separation of powers by going further than the authority Congress vested the FCC with" but concluding the Court "must abide by [the FCC's] interpretation" under the Hobbs Act).

The above notwithstanding, Freedom Mortgage recognizes that following *McLaughlin*, at least two district courts in this Circuit have held at the motion to dismiss stage that a cellular telephone can be "residential" for purposes of Section 227(c). *See Newman v. SGMS, Inc.*, No. 3:25-CV-0042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025) and *Clemens v. Consumer Sol. Ctr., et al.*, No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2604494 (E.D. Va. July 14, 2025), *report and recommendation adopted*, No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2427685 (E.D. Va. Aug. 22, 2025). But the analysis in both of these decisions is flawed.

As an initial point, both cases recognized that the Fourth Circuit has not addressed whether cellular telephones fall within the scope of protection offered by the TCPA. *See Newman*, 2025 WL 2524131, at *2 ("The Fourth Circuit has not addressed whether cell phone or VOIP owners are considered 'residential telephone subscribers[.]'" (citation omitted)); *Clemens*, 2025 WL 2604494, at *6 n.6 (citing *Gaker* to acknowledge that the Fourth Circuit has not addressed whether cellular telephone owners are residential telephone subscribers).

Even more critically, neither opinion performed a statutory analysis justifying the extension of Section 227(c) to cellular telephone users. In *Newman*, the Western District of North Carolina simply observed that "recent district court decisions in the Fourth Circuit generally assume that the TCPA extends to wireless telephone numbers" and cited exclusively pre-*McLaughlin* caselaw.

17

*Newman*, 2025 WL 2524131, at *2.[12] The court performed no statutory analysis and instead concluded it found "this recent majority persuasive." *Id.* at *3. This does not satisfy the statutory analysis district courts are obligated to perform by *McLaughlin*. In *Clemens*, the Eastern District of Virginia—in a discussion relegated to a footnote—acknowledged not only that the Fourth Circuit "has not addressed" the issue but also that the district courts are "split." *Clemens*, 2025 WL 2604494, at *6, n.6. Citing two cases, it concluded that it "agree[d]" with those decisions and thus "a cell phone may plausibly be alleged as residential for purposes of the TCPA." *Id.* As with *Newman*, the *Clemens* court performed no independent analysis of the statute.[13] Following *McLaughlin*, this Court cannot simply defer to these prior decisions and must perform a statutory

---

[12]  The decisions cited by *Newman* (*see Newman*, 2025 WL 2524131, at *2) either did not independently analyze whether Section 227(c) applied to cellular telephones or else simply deferred to the FCC. *See Slate v. Healthy Spirit, LLC*, No. MJM-23-3034, 2025 WL 326985 (D. Md. Jan. 28, 2025) (extending the TCPA to cellular telephones without any statutory analysis); *Williams v. Quantum 3 Media, LLC*, No. 3:23-CV-037-RJC-DCK, 2024 WL 5500192, at *3-4 (W.D.N.C. Feb. 27, 2024) (acknowledging the defendant's statutory argument regarding the term "residential" but "agree[ing]" with the FCC's analysis and declining to "decide whether or not the Hobbs Act applies") (Keesler, Mag. J.); *Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121 (D. Md. Aug. 17, 2023) (concluding the Hobbs Act precluded it from reviewing the FCC's conclusion that the TCPA covers cellular telephones); *Mey v. Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey P.A.*, No. 5:23-CV-46, 2023 WL 12090755 (N.D. W. Va. June 18, 2023) (performing no statutory analysis to extend the TCPA to cover cellular telephones); *Nickson v. Advanced Mktg. & Processing, Inc.*, Civ. No. DLB 22-2203, 2023 WL 4932879, at *6 n.6 (D. Md. Aug. 2, 2023) (noting that the court "declines to decide the issue and assumes, without deciding, that" the plaintiff's number is residential); *Davis v. Reliance First Cap. LLC*, No. 7:22-CV-00018, 2023 WL 1982354, at *4 (E.D.N.C. Feb. 13, 2023) (stating allegations that the "cell phone was on the Do Not Call Registry" were sufficient without statutory analysis).

[13]  The two cases relied upon by the *Clemens* court (*see Clemens*, 2025 WL 2604494, at *6, n.6) pre-date *McLaughlin* and themselves performed no relevant statutory analysis. *See Boger v. Citrix Sys., Inc.*, 8:19-cv-01234-PX, 2020 WL 1033566, at *4 (D. Md. Mar. 3, 2020) (concluding it was "premature" to determine at the dismissal stage whether the plaintiff's cellular telephone could be deemed residential) and *Boardman v. Green Dot Corp.*, No. 3:21-CV-00174-FDW-DSC, 2021 WL 3699856 (W.D.N.C. Aug. 19, 2021) (same).

analysis of Section 227(c) to determine the scope of its private right of action. *See e.g.*, *El Sayed*, 2025 WL 2997759, at *2; *Davis*, 2025 WL 2491195, at *3-4; *Jones*, 792 F. Supp. 3d at 901.

## III.  Plaintiff's SCTPPA Claim—Which Is Entirely Contingent On The TCPA Claim— Should Also Be Dismissed

As Plaintiff has not properly alleged a TCPA violation premised on Section 227(c) because the do-not-call provisions of the TCPA do not apply to cell phones, the Court should also dismiss Plaintiff's SCTPPA claim. Although the SCTPPA defines telephone solicitation to include cellular telephones, *see* S.C. Code Ann. § 37-21-20(6), Plaintiff's SCTPPA claim is entirely contingent on the viability of the TCPA claim. (*See* Amended Complaint ¶ 69 ("The SCTPPA prohibits, *inter alia*, a party from initiating, or causing to initiate, a telephone solicitation to an area code of the state of South Carolina to a number that is registered on the National Do Not Call Registry."); *see also* S.C. Code Ann. § 37-21-70(B).) Thus, as the TCPA claim is not viable, the SCTPPA claim must also be dismissed.

## CONCLUSION

For the reasons discussed above, Freedom Mortgage respectfully requests that the Court dismiss the Amended Complaint with prejudice, and grant such other and further relief as this Court deems just and necessary

DATED: November 26, 2025                Respectfully submitted,

                                                 **RIMŎN PC**

                                                 By: _/s/ Keith D. Munson_
                                                 **Keith D. Munson**

                                                 Keith D. Munson
                                                 220 North Main St.
                                                 Suite 500
                                                 Greenville, SC 29601
                                                 Telephone: (864) 420-3426
                                                 Email: keith.munson@rimonlaw.com

19

**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*) Leslie
Demers (*pro hac vice*)
Colm P. McInerney (*pro hac vice*)

One Manhattan West
New York, New York 10001 Telephone:
(212) 735-3000
Facsimile: (212) 735-2000
Email: michael.mctigue@skadden.com
        meredith.slawe@skadden.com
        leslie.demers@skadden.com
        colm.mcinerney@skadden.com

*Counsel for Defendant Freedom Mortgage
Corporation*