IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Brittany Williams, *individually and on behalf of a class of all persons and entities similarly situated*, | ) ) ) ) | Case No. 3:25-cv-12599-JDA |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Freedom Mortgage Corporation, | ) ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant Freedom Mortgage Corporation ("Defendant" or "Freedom Mortgage")'s motion to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 24.] The motion is fully briefed and ripe for review. [*See* Docs. 27; 29.]

For the reasons stated herein, the Court denies Defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3). Nevertheless, in its discretion and in the interest of justice, the Court will transfer the action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404. The Court denies Defendant's motion to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) without prejudice and with leave to re-file upon transfer.

## BACKGROUND

Plaintiff filed an Amended Complaint on September 30, 2025, asserting causes of action for (1) Defendant's alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") on behalf of Plaintiff and a National Do Not Call Registry Class

(the "National DNC Class") and (2) Defendant's alleged violation of § 37-21-70 of the South Carolina Telephone Privacy Protection Act, S.C. Code Ann. § 37-21-10, *et seq.* ("SCTPPA") on behalf of Plaintiff and a "SCTPPA Class."[1]  [Doc. 5.]

Plaintiff alleges that her telephone number, (843) XXX-XXXX, "is a non-commercial telephone number" used "for personal, residential, and household reasons." [Doc. 5 ¶¶ 24–25.]  The number "has been listed on the National Do Not Call Registry since she personally registered it there in 2017."  [*Id.* ¶ 26.]

On July 24, 2025, Plaintiff allegedly received a telemarketing call purporting to offer Freedom Mortgage's "loan services."  [*Id.* ¶ 29.]  Plaintiff allegedly received additional calls on July 25, July 31, and August 5, 2025, from the same telephone number, with each caller identifying as "a licensed loan originator or advisor actively authorized to represent Freedom Mortgage or related mortgage companies at the time of the calls."  [*Id.* ¶¶ 30–42.]  Certain of the callers identified themselves as employees of Freedom Mortgage operating out of New Jersey and Florida, respectively.  [*Id.* ¶¶ 31, 36.]  Plaintiff claims that she has never been a customer of Freedom Mortgage, has never done business with Freedom Mortgage, and has never asked or inquired to be a customer of Freedom Mortgage.  [*Id.* ¶ 27.]

Plaintiff brings this action on behalf of herself and the following proposed classes:

> **National DNC Class**: All persons in the United States whose
> (1) telephone numbers were on the National Do Not Call

---

[1] The National Do Not Call Registry allows consumers to register their telephone numbers to indicate their desire not to receive telephone solicitations at those numbers.  47 C.F.R. § 64.1200(c)(2); [Doc. 5 ¶ 15].  The TCPA prohibits telephone solicitations to residential telephone subscribers listed on the National Do Not Call Registry.  *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 648 (4th Cir. 2019); [Doc. 5 ¶ 17].  Similarly, the SCTPPA prohibits telephone solicitations to South Carolina telephone numbers listed on the National Do Not Call Registry.  S.C. Code Ann. §37-21-70(B); [Doc. 5 ¶ 19].

> Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase [of] Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **SCTPPA Class**: All persons with a South Carolina area code to whom (a) at any time in the period that begins four years before the date of filing this Complaint to trial (b) from or on behalf of the Defendant (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

[*Id.* ¶ 47.] Plaintiff seeks certification of the proposed classes; declaratory relief; injunctive relief; money damages, attorneys' fees, and costs; and "such other and further relief as the Court deems necessary, just, and proper." [*Id.* at 9–10.]

On November 26, 2025, Defendant filed a motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. [Doc. 24.] Plaintiff filed a response on December 31, 2025. [Doc. 27.] Defendant filed a reply on January 23, 2026. [Doc. 29.]

## APPLICABLE LAW

**Personal Jurisdiction**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss an action based on a lack of personal jurisdiction. "[W]hen . . . [a] court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Lab'ys, Inc. v. Akzo*, 2 F.3d 56, 60 (4th Cir. 1993). To satisfy this burden, the plaintiff must base its claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). Accordingly, "[t]he

pleadings, affidavits, and other supporting documents presented to the court are construed in the light most favorable to [the] plaintiff, drawing all inferences and resolving all factual disputes in its favor." *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000); *see also Mylan Lab'ys*, 2 F.3d at 62 ("In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."). The court, however, "need not credit conclusory allegations or draw farfetched inferences." *Massellli,* 2000 WL 691100, at *1 (internal quotation marks omitted).

Personal jurisdiction in federal courts is determined by whether the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In determining whether South Carolina state law would authorize personal jurisdiction over the defendant, the Court properly examines both the state long arm statute and the due process requirements of the Fourteenth Amendment. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

South Carolina's long arm statute provides:

> (A)     A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
>
> > (1)     transacting any business in this State;
> >
> > (2)     contracting to supply services or things in the State;
> >
> > (3)     commission of a tortious act in whole or in part in this State;

4

(4)     causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5)     having an interest in, using, or possessing real property in this State;

(6)     contracting to insure any person, property, or risk located within this State at the time of contracting;

(7)     entry into a contract to be performed in whole or in part by either party in this State; or

(8)     production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A).

"South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp.,* 126 F.3d at 623. Therefore, the appropriate question for the Court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "established 'minimum contacts with [South Carolina] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.""" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may arise through specific jurisdiction, based on conduct alleged in the suit, or through general jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir. 2002). To determine whether specific personal jurisdiction exists, courts should examine "(1) the extent to which the defendant

5

'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* at 712. If the defendant's contacts with the state are not the basis of the suit, then jurisdiction must come from more persistent, unrelated contacts with the state; "the defendant's activities in the state must have been continuous and systematic." *Id*.

**Venue**

Under the general venue statute, a civil action may be brought, and venue is proper, in:

> (1)     a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)     if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper." *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 616 (D.S.C. 2013) (cleaned up). However, the plaintiff is required "to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012). "In assessing whether there has been a prima facie venue showing, [the court]

view[s] the facts in the light most favorable to the plaintiff." *Id*. Moreover, "[o]n a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Id*. at 365–66.

"Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws[.]" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). "[I]n a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant." *Bartko v. Wheeler*, No. 1:13CV1006, 2014 WL 29441, at *8 (M.D.N.C. Jan. 3, 2014), *aff'd*, 589 F. App'x 181 (4th Cir. 2015) (internal quotation marks omitted). In the event venue is improper in the district in which a case is filed, the district court retains discretion to dismiss or, if it is in the interest of justice, to transfer the case to any district in which it could have been brought. 28 U.S.C. § 1406(a). "Transfer is generally considered to be more in the interest of justice than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district." *Blue Rhino Glob. Sourcing, Inc. v. Best Choice Prods.*, No. 1:17CV69, 2018 WL 4784006, at *3 (M.D.N.C. June 20, 2018) (cleaned up).

Even if venue is proper under 28 U.S.C. § 1391, a district court may exercise its discretion to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" for the convenience of the parties and witnesses and/or in the interest of justice. 28 U.S.C. § 1404(a). District courts have wide discretion to transfer an action under § 1404(a) "to

prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).  Section § 1404(a), however, cannot be used by a defendant to challenge advantages accruing to a plaintiff who has chosen a forum that, though inconvenient to defendant, is a proper forum. *Id.* at 633–34.

"District courts within this circuit consider four factors when deciding whether to transfer venue [under § 1404]: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  The burden lies with the party seeking transfer to "show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002) (internal quotation marks omitted).

**Failure to State a Claim**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the [petition] in a light most favorable to the [petitioner]." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion,

a court may rely on only the [petition's] allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the [respondent] fair notice of what the . . . claim is and the grounds upon which it rests." While a [petition] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [petitioner's] obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the [petition] are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more ... than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects

9

the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a petitioner to articulate facts that, when accepted as true, demonstrate that the petitioner has stated a claim that makes it plausible the petitioner is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendant argues that the action should be dismissed or transferred for lack of personal jurisdiction and improper venue because the Amended Complaint fails to allege where Plaintiff was located when she received the telemarketing calls in question. [Doc. 24-1 at 15–19.] In addition, Defendant contends that the Court should transfer the action to the Southern District of Florida (where Freedom Mortgage is headquartered) or the District of New Jersey (where Freedom Mortgage is incorporated) because it may not exercise specific personal jurisdiction over the putative out-of-state absent class members' claims under *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017).[2] [*Id.* at 19.] Next, Defendant argues that Plaintiff's TCPA claim should be dismissed because § 227(c) of the TCPA protects only "residential" subscribers and therefore excludes cellular telephone users. [*Id.* at 20–25.] Finally, Defendant argues

---

[2] Defendant also maintains that the 28 U.S.C. § 1404 factors weigh in favor of transfer. [Doc. 29 at 3–7.]

10

that Plaintiff's SCTPPA claim should be dismissed because it "is entirely contingent on the viability of the TCPA claim." [*Id.* at 25.]

Plaintiff attests that "she received all of the calls at issue in South Carolina on her South Carolina telephone number" such that the Court may exercise specific personal jurisdiction over Defendant. [*Id.* at 14; *see also* Doc. 27-1 ¶¶ 5–11.] Moreover, Plaintiff argues that "the claims of unnamed putative class members are irrelevant" for purposes of assessing personal jurisdiction. [Doc. 27 at 18–19.] Next, Plaintiff contends that several factors weigh against transfer under 28 U.S.C. § 1404—chiefly, Plaintiff's choice of forum. [*Id.* at 20–23.] In response to Defendant's arguments regarding the inapplicability of § 227(c) of the TCPA to cellular telephones, Plaintiff argues that the plain text of the statute protects those who use cellular telephones "for personal activities associated with . . . private, domestic life." [*Id.* at 4 (internal quotation marks omitted); *see also id.* at 2–14.] Finally, Plaintiff argues that her SCTPPA claim is not contingent on her TCPA claim because the SCTPPA independently prohibits telemarketing calls to cellular numbers listed on the National Do Not Call Registry. [*Id.* at 22–25.]

**Personal Jurisdiction**

As an initial matter, "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020); *see also Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). As such, the Court will consider the facts alleged in Plaintiff's Amended Complaint *and* later-submitted affidavit. [*See* Docs. 5; 27-1.]

As discussed previously, courts examine "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State;

11

(2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable'" to ascertain whether specific personal jurisdiction exists. *ALS Scan, Inc.,* 293 F.3d at 712. As to the first factor, Defendant has intentionally targeted the South Carolina market: specifically, Defendant maintains a location in South Carolina and is registered to do business there. *See* https://businessfilings.sc.gov/BusinessFiling/Entity/Search (search "Freedom Mortgage Corporation"); [Doc. 27 at 15–16]. As to the second factor, the present suit arises out of or relates to Defendant's contacts with the forum state because Defendant allegedly directed telemarketing calls to Plaintiff's South Carolina telephone number while Plaintiff was physically located in South Carolina. [*See* Doc. 27 at 14; Doc. 27-1 ¶¶ 5–11.] As to the third factor, courts routinely hold that personal jurisdiction is constitutionally reasonable in the district where an unlawful telephone communication was received. *See, e.g., Jones v. Mutal of Omaha Ins.,* 639 F. Supp. 3d 537, 550 (D. Md. 2022) ("[The plaintiff] is a Maryland resident and allegedly received the calls at issue while she was in Maryland. And, in the context of the TCPA, personal jurisdiction is proper in the District where an unlawful communication is received." (cleaned up)); *Payton v. Kale Realty,* No. 13 C 8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2024) ("[C]ourts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant."); *Luna v. Shac, LLC,* No. C14-00607 HRL, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) ("When [the defendant] intentionally sent unsolicited text messages advertising [itself] to California cell phone numbers, which conduct gave rise to this litigation, it purposefully directed its activity to California such that [the defendant] is reasonably subject to the personal

jurisdiction of this Court."); *Baker v. Caribbean Cruise Line, Inc.,* No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) ("[The] complaint in this case is sufficient to establish specific jurisdiction, based on the allegation that Defendant made calls to [the plaintiff's] Arizona [cell phone] number and the fact that those calls are the basis for [the plaintiff's] claims."); *Branham v. ISI Alarms, Inc.,* No. 12-CV-1012 (ARR)(MDG), 2013 WL 4710588, at *8 (E.D.N.Y. Aug. 30, 2013) ("[The] defendants reasonably should have anticipated that the use of [an automated] system to call a New York cell-phone number could subject them to being haled into court in New York.").

The Court need not decide at this early stage whether it has specific personal jurisdiction over Defendant as to the putative out-of-state absent class members' claims. *See Molock v. Whole Foods Market Grp., Inc.,* 952 F.3d 293, 298 (D.C. Cir. 2020) ("It is class certification that brings the unnamed class members into the action and triggers due process limitations on a court's exercise of personal jurisdiction over their claims."); *Cruson v. Jackson Nat'l Life Ins.*, 954 F.3d 240, 250–51 (5th Cir. 2020) (determining that a personal jurisdiction challenge to unnamed class members' claims could not be raised until the class certification stage); *Moser v. Benefytt,* 8 F.4th 872, 877–79 (9th Cir. 2021) (same); *Vance v. DirecTV, LLC,* No. 5:17-CV-179, 2022 WL 16857329, at *2 (N.D.W. Va. Nov. 9, 2022) ("Defendant's personal jurisdiction defense as to absent class members first became available when this Court certified a nationwide class . . . . [O]nly at the time of this Court's certification order did the putative class members bec[o]me parties to this action, only at that time did they seek this Court's personal jurisdiction over their claims, and only at that time did defendant's personal jurisdiction defense become legally viable."); *Newman v. Direct Energy, LP,* No. GJH-21-2446, 2022 WL 4386235, at *5

13

(D. Md. Sept. 22, 2022) ("[The defendant's] argument [that the Court lacks personal jurisdiction over the class allegations] is premature and the Court will deny the [defendant's] motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction."); *Richards v. NewRez LLC,* No. ELH-20-1282, 2021 WL 1060286, at *18 (D. Md. Mar. 18, 2021) ("The case is at inception, and plaintiffs have not yet brought a motion to certify a nationwide class. Thus, at this juncture, I need not decide . . . whether the Court has [specific personal] jurisdiction over [the defendant] with respect to the class claims.").

Based on the foregoing, the Court finds that it has personal jurisdiction over Defendant as to Plaintiff's individual claims.  The Court need not decide at this stage whether the Court has personal jurisdiction over Defendant as to the putative out-of-state absent class members' claims.  Therefore, the Court denies Defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2).

**Venue**

In TCPA cases, venue is proper "in the district . . . where the call was received." *Cunningham v. Headstart Warranty Grp., LLC,* No. 3:23-CV-00239-GCM, 2024 WL 967665, at *2 (W.D.N.C. Mar. 6, 2024).  Because Plaintiff attests that she received the allegedly unlawful telemarking calls in South Carolina [*see* Doc. 27-1]; *Aggarao,* 675 F.3d at 365–66 ("On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings."), the Court concludes that the District of South Carolina is a proper venue as to Plaintiff's individual claims and denies Defendant's motion to dismiss the Amended Complaint under Rule 12(b)(3).  Further, the Court declines to consider venue as to the putative out-of-state absent class members, as they are not yet parties to the action.  *See, e.g., Molock,* 952 F.3d at 298.

14

Although venue is proper under 28 U.S.C. § 1391(b), the Court may nevertheless transfer venue in the interest of justice or for the convenience of the parties and witnesses under 28 U.S.C. § 1404.[3]  As previously stated, courts within this circuit consider "four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444.  For the reasons stated herein, the Court concludes that venue is more appropriate in the Southern District of Florida.  The Court will consider each of these factors in turn.

### Plaintiff's Choice of Forum

Ordinarily, a "plaintiff's choice of venue is entitled to substantial weight."  *Id.* (internal quotation marks omitted).  While this principle holds true as to Plaintiff's claim brought on behalf of the SCTPPA Class, *see Holmes v. Live Nation Ent., Inc.,* No. 1:25-cv-01138-JRR, 2025 WL 2879579, at *4 (D. Md. Oct. 9, 2025) ("Plaintiff, a Maryland resident, initiated this action in this forum on behalf of herself and other Maryland residents for alleged actions affecting Maryland residents under Maryland law. These facts support affording substantial weight to Plaintiff's choice of forum."), the geographic breadth of the proposed National DNC Class diminishes the deference afforded to Plaintiff's choice of forum, *see Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, . . . the claim of any one

---

[3] The Court may transfer venue under § 1404 after the parties have been provided with notice and an opportunity to be heard.  *See Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986).  Although Defendant's initial motion to transfer venue addressed § 1404 only in passing [*see* Doc. 24-1 at 16], Plaintiff's response to the motion and Defendant's reply both address the § 1404 factors in depth [*see* Docs. 27 at 20–23; 29 at 3–7].  As such, the parties have adequately briefed the issues such that the Court may render a decision on them.

15

plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."); *Evans v. Ariz. Cardinals Football Club, LLC*, No. WMN-15-1457, 2016 WL 759208, at *3 (D. Md. Feb. 25, 2016) ("[I]n [a class action] case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." (internal quotation marks omitted)); *Newman v. Direct Energy, L.P.*, No. SAG-21-02446, 2023 WL 2914788, at *3 (D. Md. Apr. 12, 2023) ("[B]ecause this is a [nationwide] class action case, Plaintiff's choice of forum is afforded little weight."). Further, "TCPA class actions present even less reason to credit a plaintiff's choice of forum because they are normally attorney driven and require limited participation from the named plaintiff." *Newman*, 2023 WL 2914788, at *3 (internal quotation marks omitted). Thus, the Court concludes that Plaintiff's choice of forum weighs marginally against transfer. *See Doe v. Epic Games, Inc.,* 435 F. Supp. 3d 1024, 1041 (N.D. Cal. 2020) ("Here, plaintiff purports to bring this action on behalf of a nationwide class and a California sub-class. That this class involves a putative nationwide class diminishes the deference afforded to plaintiff's choice of forum. . . . On balance, although defendant's relevant contacts with this district appear minimal, it is undisputed that plaintiff has substantial contacts with this forum. Thus, plaintiff's choice of forum is entitled to at least some deference. This factor weighs minimally against transfer.").

### *Convenience of Parties and Witnesses*

Regarding the convenience factors, Plaintiff maintains that "transfer would, at most, only shift the balance of inconvenience" from Defendant to Plaintiff. [Doc. 27 at 21 (internal quotation marks omitted).] Further, Plaintiff contends that "it is . . . difficult to

assess the costs of obtaining witness attendance or the importance of compulsory process" at this early stage of litigation. [*Id.*] Finally, Plaintiff argues that "the location of evidence does not alter the balance in favor of transfer when the information provided between the two parties . . . appears to be electronic and transferable." [*Id.* at 22 (cleaned up).] Defendant contends that the convenience factors are not dispositive. [Doc. 29 at 7.]

The Court agrees with Plaintiff that litigating the case in Florida would be more convenient for Defendant, as it is headquartered there. Likewise, litigating the case in South Carolina would be more convenient for Plaintiff and members of the putative SCTPPA Class. The relative convenience for members of the putative National DNC Class cannot be ascertained at this stage in the litigation. That said, "in the era of Zoom depositions, the likelihood of extensive travel for any witness or party is greatly minimized." *Newman,* 2023 WL 2914788, at *3. On balance, the "Court deems the 'convenience' factors to be largely neutral, in that neither party presents an overwhelmingly persuasive case that there are meaningful differences in convenience between the two prospective venues." *Id.*

### Interest of Justice

The interest of justice factor "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009) (internal quotation marks omitted). More specifically, the interest of justice "encompasses public interest factors aimed at systemic integrity and fairness." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (internal quotation marks omitted). Most prominent

17

among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments. *See id*. Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law. *Id.* at 721 n.16.

Regarding the fairness factors, Plaintiff contends that the action should remain in the District of South Carolina because she seeks to certify a SCTPPA Class comprised of class members with South Carolina area codes. [*See* Doc. 27 at 20 ("[Defendant] also has likely sent a substantial amount of other communications to South Carolina residents just like Ms. Williams. Accordingly, the Court should find this factor favors Ms. Williams, especially since Ms. Williams also has a state law claim.").] This factor weighs in Plaintiff's favor. *See Simpson v. J.G. Wentworth Co.,* No. 22-2911-KSM, 2023 WL 349251, at *8 (E.D. Pa. Jan. 19, 2023) ("Plaintiff agrees that this factor is neutral to the extent he brings putative class claims under federal law. . . .  However, . . . Plaintiff also brings claims under the [Florida Telephone Solicitations Act]. Florida has an interest in this case to the extent Plaintiff alleges that Defendant, using a Florida-based business . . ., violated Floridians' rights under a Florida statute.").

Regarding the systemic integrity factors, Defendant identifies a significant issue: should the case remain in the District of South Carolina and reach the class-certification stage, the Court may not be able to exercise personal jurisdiction over Defendant as to the out-of-state absent class members' claims. [*See* Doc. 24-1 at 19.] Indeed, the Fourth Circuit has not yet determined whether a court may exercise personal jurisdiction over a defendant as to the claims of out-of-state absent class members without an adequate link

18

to the court's home jurisdiction pursuant to *Bristol-Myers Squibb*. *See Bristol-Myers Squibb*, 582 U.S. at 278 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."); *Newman*, 2023 WL 2914788, at *4; *see also Al Haj. v. Pfizer, Inc.,* 338 F. Supp. 3d 815, 818 (N.D. Ill. 2018) ("The cases have split on the question whether *Bristol-Myers* requires that, for an absent class member to be part of the class, and assuming the defendant is not subject to general jurisdiction, the court must have specific jurisdiction over the defendant as to that class member's claim. Some courts hold that *Bristol-Myers* does not require a court to assess personal jurisdiction with regard to non-resident putative class members. Other courts hold the opposite—that *Bristol-Myers* requires personal jurisdiction to be assessed as to each absent class member." (cleaned up)) (collecting cases). As discussed previously, Defendant's argument that the Court lacks specific personal jurisdiction over Defendant regarding the class allegations is premature at this state in the litigation. However, Defendant intends to litigate the issue at the class-certification stage. [*See* Doc. 24-1 at 19 n.10 ("Should this case not be dismissed or transferred, Freedom Mortgage reserves the right to move to strike the class allegations including on the grounds that the Court cannot certify a nationwide class because it would lack personal jurisdiction over the out-of-state absent class members.").] As such, "there is a separate question about whether it is in the interest of justice to transfer this case to a court that can properly exercise general jurisdiction over [Defendant]." *Newman*, 2023 WL 2914788, at *4.

19

The Court concludes that transfer to the Southern District of Florida would "[further] the goals of judicial economy and [eliminate] the risk of unnecessary expenditure of resources on a protracted jurisdictional dispute or, worst case scenario, an eventual disposition that could be overturned on appeal." *Id; see also Wenokur v. AXA Equitable Life Ins.,* No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 & n.4 (D. Ariz. Oct. 2, 2017) (transferring the action to the defendant's home district and noting that the court "lack[ed] personal jurisdiction over the claims of putative class members with no connection to [the named plaintiff's chosen forum] and therefore would not be able to certify a nationwide class"); *Tyler v. Gaines Motor Lines, Inc.,* 245 F. Supp. 2d 730, 734 (D. Md. 2003) ("Because the question is a close one, I will exercise my discretion to transfer this case in the interests of justice. *See* 28 U.S.C. § 1404. For me to hold that [the defendant] is subject to personal jurisdiction would inject into the case an unnecessary legal issue that would render the entire litigation null and void if, on appeal, jurisdiction were found to be lacking."); *Workman v. Figueroa*, No. 3:06-0648, 2007 WL 951843, at *3 (S.D.W. Va. Mar. 29, 2007) (transferring pursuant to § 1404 where "a finding of jurisdiction . . . risks reversal on appeal which will make the entire litigation null and void"); *BSN Med. Inc. v. Am. Med. Prods., LLC,* No. 3:11CV92-GCM-DSC, 2012 WL 171269, at *4 (W.D.N.C. Jan. 20, 2012) ("The interests of justice strongly favor transfer so that any award [the plaintiff] might ultimately win here will not be subject to a successful appeal challenging this Court's personal jurisdiction over [the defendants]."); *First Advisory, LLC v. Am. Water Star, Inc.,* No. Civ.A.CCB-04-1690, 2004 WL 2538388, at *4 (D. Md. Nov. 9, 2004) (transferring case because "a victory subject to being set aside for lack of jurisdiction would be of little value"). This factor weighs significantly in Defendant's

20

favor. *But see Button v. Leaffilter N., LLC,* No. 1:24-cv-00132-CCE-JLW, ECF No. 16 at 3–4 (M.D.N.C. May 14, 2024) ("[The defendant] identifies a legal issue that will arise in connection with class certification if this case remains in North Carolina that it says will not arise if the case is transferred to Ohio. The plaintiff is fully aware of this legal issue, as the briefing shows, and assumes the risk of a negative result. Almost every case presents legal issues for decision, this Court is experienced in efficiently managing motions practice in purported class actions and trying them as necessary, and there is no reason to think resolution of this legal issue will delay the proceedings.").[4]

Based on the foregoing considerations, the Court will, in its discretion and in the interest of justice, transfer the action to the Southern District of Florida. *See Holmes*, 2025 WL 2879579, at *7 ("While the Court appreciates that Plaintiff's choice of venue is entitled to . . . weight, especially where she asserts Maryland claims for Maryland residents, the court's evaluation and assessment of the other factors . . . overcome Plaintiff's choice."). Importantly, the Southern District of Florida is a proper venue under § 1391 because the Court can exercise general jurisdiction over Defendant there. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011) (noting that a court may properly exercise general jurisdiction over a corporation in its state of incorporation or in the state of its principal place of business).[5] Moreover, the

---

[4] The undersigned does not find the court's conclusion in *Button* persuasive. As previously discussed, Plaintiff's choice of forum—and, by extension, Plaintiff's assumption of the risk of an unfavorable legal result in that forum—is afforded less weight in a purported nationwide class action.

[5] The undersigned prefers transfer to the Southern District of Florida over the District of New Jersey. Although the courts of both states may exercise general jurisdiction over Defendant, the undersigned assumes that evidence and witnesses related to this action

undersigned sees no reason why the Southern District of Florida cannot correctly apply South Carolina law regarding Plaintiff's claim brought on behalf of the SCTPPA Class.

**Failure to State a Claim**

Because the Court concludes that transfer to the Southern District of Florida is proper, it need not address the merits of Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6).  Accordingly, the Court denies Defendant's motion to dismiss the Amended Complaint for failure to state a claim without prejudice and with leave to re-file upon transfer.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3) [Doc. 24] is DENIED.  However, pursuant to 28 U.S.C. § 1404, the action is nevertheless TRANSFERRED to the United States District Court for the Southern District of Florida.  Defendant's motion to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) [Doc. 24] is DENIED without prejudice and with leave to re-file upon transfer.

IT IS SO ORDERED.

<u>s/ Jacquelyn D. Austin</u>
United States District Judge

July 23, 2026
Greenville, South Carolina

---

are more likely to be found in the state encompassing Defendant's "nerve center": the center of "direction, control, and coordination."  *Hertz Corp. v. Friend,* 559 U.S. 77, 96 (2010).